## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Vanessa Niekamp** | ) | |
| | ) | **CASE NO. 2:18-cv-00100** |
|     **Plaintiff,** | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| **Ohio Board of Embalmers &** | ) | **COMPLAINT** |
| **Funeral Directors** | ) | **JURY DEMAND ENDORSED HEREON** |
| | ) | |
|     -and- | ) | |
| | ) | |
| **Thomas Taneff, individually and** | ) | |
| **in his official capacity as a Member of** | ) | |
| **the Ohio Board of Embalmers &** | ) | |
| **Funeral Directors** | ) | |
| | ) | |
|     **Defendants.** | ) | |

Now comes Plaintiff, Vanessa Niekamp, by and through counsel, and for her Complaint against Defendants Ohio Board of Embalmers and Funeral Directors and Thomas Taneff states as follows:

### I.    INTRODUCTION

1. Plaintiff Vanessa Niekamp was the Executive Director of Defendant Ohio Board of Embalmers and Funeral Directors from 2012 to July 2016. Plaintiff was subjected to a hostile work environment because of sex, and subjected to retaliation and constructive termination in violation of Title VII of the 1964 Civil Rights Act, Title 42 U.S.C. §§ 2000e, *et seq*. and Ohio Revised Code §§ 4112, *et seq*.

1

## II. JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3) to enforce rights granted under Title VII of the 1964 Civil Rights Act.  This Court also has supplemental jurisdiction to hear state law claims pursuant to 28 U.S.C. § 1367.

3. Plaintiff has exhausted statutory prerequisites to filing suit.  Plaintiff filed a timely charge with the Equal Employment Opportunity Commission.  On November 18, 2017, Plaintiff received a Notice of Right to Sue from the EEOC, permitting Plaintiff to file a discrimination lawsuit in court within ninety (90) days of her receipt of the Notice.  The notice is attached hereto as Exhibit 1.

4. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391 because the incidents, events, and omissions that gave rise to this controversy occurred in Franklin County, Ohio.

## III. PARTIES

5. Plaintiff Vanessa Niekamp ("Plaintiff") is a woman.  In 2012, Defendant Ohio Board of Embalmers and Funeral Directors ("Board") appointed Plaintiff as its Executive Director and she served at its pleasure, as provided in O.R.C. § 4717.03(B).  She was an "employee" as that term is defined in O.R.C. § 124.01(F).

6. Defendant Board is a state administered professional governance organization that oversees (regulates) the "funeral business" and "embalmers" as those terms are defined in O.R.C. § 4717.01(C) and (E), respectively.  It is an "appointing authority" as that term is defined in O.R.C. § 124.01(D).

7.  In December 2014, Defendant Thomas Taneff ("Taneff") was lawfully appointed to the Board as a representative of the public.  Taneff is also an attorney licensed by the Ohio Supreme Court.

## IV.  FACTS

8.  In 2012, Vanessa Niekamp was appointed as the Executive Director of the Ohio Board of Embalmers and Funeral Directors.  As Executive Director, she served as the Board's chief administrative officer, acted as custodian of its records, executed all of its orders, and employed staff to provide assistance that it considered necessary.

9.  On December 12, 2014, Taneff was appointed to the Board of Embalmers and Funeral Directors for a term beginning December 12, 2014 and ending June 30, 2019.

10.  As of January 1, 2015, the Board membership consisted Board President Thomas Fleming, Gregory Boyer, Robert Wasko, Linda Beltzer, and Defendant Thomas Taneff.

11.  Shortly after joining the Board, Taneff began a campaign to harass and intimidate Plaintiff because of sex.  Taneff's conduct included regularly addressing Plaintiff with a crude and offensive sex-based epithet, making burdensome demands for assistance and information that interfered with her other duties, and repeatedly leveling baseless charges of wrongdoing, including a complaint that Plaintiff had engaged in the unauthorized practice of law for engaging in settlement negotiations on behalf of and at the direction of the Board.  After Plaintiff complained about Taneff's conduct, she was the subject of retaliation resulting in her constructive discharge from her position.  Defendants replaced Plaintiff with less qualified male candidates who were also paid more than her.

**Offensive Epithets**

12. Soon after Taneff joined the Board, Plaintiff noticed that Taneff regularly used the term "peachka" to address Plaintiff at work, and in the presence of other Board members, including before and after Board meetings.

13. Plaintiff was unfamiliar with the term, and did not request or consent to be addressed by that term by Taneff.

14. In August 2015, Board Member Bob Wasko advised Plaintiff that he looked up the term "peachka" and learned that it was a foreign noun of Bosnian and Serbian origin that was a derogatory term for a woman's genitalia that was the rough equivalent of the word "cunt" in English.

**Burdensome Demands, Unfounded Criticism, and Baseless Charges of Wrongdoing**

15. From the commencement of his term as a board member, Taneff engaged in a pattern of petty but burdensome demands that interfered with Plaintiff's job duties, and he repeatedly leveled baseless charges of wrongdoing and attempted to justify firing or disciplining Plaintiff.

16. Over two days in February 12 and 13, 2015, Taneff sent a flurry of emails, all copied to the Board President. In the course of more than a dozen emails in three separate subject lines, Taneff demanded tech support from a "tech guy", expressed incredulity and suspicion that Plaintiff handled technology matters for the agency, demanded assurance that Plaintiff did not have access to his BoardDocs account and password, demanded a transcript of the prior day's Board meeting minutes, challenged the wording of those meeting minutes (disputing for instance that he left the meeting for personal reasons, and insisted that the minutes note that it was for a doctor's appointment), and demanded that the Board hire a stenographer to transcribe future meetings.  See Exhibit 2, February 12, 2015 Email Exchange.

17. Although Plaintiff promptly responded to each and every email request, and made arrangements to video record future Board meetings, Taneff insisted that Plaintiff failed to follow his instructions or address his concerns. Taneff demanded that the board schedule an executive session to discuss employment and discipline of Plaintiff, and requested a draft motion from the Attorney General's office. *Id.*; See also Exhibit 3, March 11, 2015 Email Exchange between Taneff and Summer Moses.

18. On April 2, 2015, Taneff questioned Plaintiff about her meeting with Jonathan Fulkerson Chief Executive of Agencies at the Attorney General's Office. See Exhibit 4, April 2, 2015 Taneff Plaintiff emails.

19. At the April 8, 2015 Board meeting, Taneff questioned Plaintiff about the Board's decision to purchase a video recorder and complained that the video was not sufficient because Plaintiff's back was facing the camera and that her voice was too soft to be heard in the audio.

20. At the April 8, 2015 meeting, Taneff aggressively complained and berated Plaintiff for holding a meeting with the Attorney General's Office to discuss the Board's concerns. Taneff alleged that Plaintiff did not apprise him of the meeting and did not follow protocol, but Taneff himself had directed Plaintiff during the February 2015 Board meeting to arrange a meeting with that office.

21. Following the meeting, Taneff demanded that Plaintiff respond via email to further questions regarding the meeting with the Attorney General's office. See Exhibit 5, April 11, 2015 Email Exchange.

22. Former Board Member Pamela Williams-Briggs attended the Board's May meeting to state that she was displeased and disturbed by the appearing to be "under attack being questioned as if in court." See Exhibit 6, May 18, 2015 Minutes.

23. At the July 2015 meeting, members Bryan Chandler and Jack Marchbanks joined the Board. The Board elected Gregory Boyer as President, Robert Wasko as Vice-President and Byran Chandler as the Secretary-Treasurer. Linda Beltzer left the Board.

## Allegations of Unauthorized Practice of Law

24. Beginning in July 2015, Taneff, the only attorney member of the Board, worked with the Attorney General's Office to level charges that Plaintiff was engaged in the unauthorized practice of law.

25. On January 13, 2014, before Taneff was a member, the Board had discussed directing Plaintiff, a non-attorney, to negotiate settlements with the licensees subject to license violations and it approved a motion to allow Plaintiff to settle pending cases. See Exhibit 7, January 2014 Minutes, at 23-24.

26. On February 10, 2014, the Board voted unanimously to authorize and direct Plaintiff to act on its behalf by proposing, considering, and coordinating consent/settlement agreements with final approval, to include signature, by the President and Secretary Treasurer. See Exhibit 8, February 2014 Minutes, at 15.

27. Taneff knew and approved of the practice of the Board delegating negotiating authority to its executive director. At the February 11, 2015 Board meeting, in which Taneff participated, the Board discussed allowing Plaintiff to enter into settlement discussions in a disciplinary case:

> Assistant Attorney General Summer Moses spoke up and said the Executive Director may not engage in settlement negotiations. She may give out specific terms and settlement agreement that has been drafted. Mr. Wasko stated the Executive Director can per our previous motion that the AAG's Office recommended. Mr. Taneff stated it has been his experience with the Cosmetology Board that the Executive Director does settle cases on behalf of the board. AAG Moses said the Cosmetology board sends out the NOH with a settlement agreement and terms attached. The Respondent may either accept those terms or choose to move towards a hearing. At the time that Respondent rejects the original terms and moves towards a hearing, the matter comes to the AG's office.

6

> AAG Moses explained that once terms were being discussed and changed the matter would need to come to her office and the AAG would be happy to take over. Mr. Taneff stated that he did not agree, and reiterated his previous experience with the Cosmetology Board. Mr. Wasko stated they went to having the Executive Director settle matters for them because the AAG's Office told them to and could not get anything done for the board. AAG Moses then said the board is not required to follow her advice.
>
> Mr. Wasko recalled the decision by the board to provide control of settlement agreements to the executive director as a result of the Ohio Attorney General's Office deficiency in settling compliance cases.

See Exhibit 9, February 11, 2015 Minutes at 4.  At the conclusion of the discussion, the Board voted unanimously to direct Plaintiff to enter into settlement discussions in the case under consideration.

28.     On July 22, 2015, Plaintiff and the Board received a letter from AAG Susan Walker (Walker Memo) stating that Plaintiff's negotiation of settlements with the Board's licensees constituted the unauthorized practice of law.  See Exhibit 10, July 22, 2015 Walker Memo.

29.     Prior to presenting the letter to the Board, AAG Walker had submitted a draft of the Walker letter to Taneff requesting his comments and suggestions, which he provided and were incorporated into the final draft of the letter.  See Exhibit 11, July 22, 2015 Taneff Walker emails and memo draft.

30.     On July 23, 2015, Plaintiff submitted a request to the Board on the Unauthorized Practice of Law of the Ohio Supreme Court, which was copied to the Columbus Bar Association, for an informal nonbinding advisory opinion as to whether her negotiations of settlements on behalf of the Board constituted the unauthorized practice of law. See Exhibit 12, July 23, 2015 Request for Advisory Opinion on the Unauthorized Practice of Law.

31.     Upon receipt of the Walker letter, Plaintiff ceased all activities related to the negotiations of settlements with the Board's licensees.

7

32. On August 19, 2015, Taneff questioned Plaintiff about her request for an Advisory Opinion. See Exhibit 13, August 19, 2015 Negotiation of Settlements emails.

33. AAG Walker sent the Board a letter regarding Plaintiff's request for an Advisory Opinion. See Exhibit 14, August 20, 2015 Walker email and letter.

### Plaintiff's Complaints about Taneff's Conduct

34. On August 15, 2015, Plaintiff was informed by another Board member of the significance of the term "peachka," which Taneff had used to address Plaintiff in the presence of other Board members. Plaintiff was humiliated to learn the significance of the term.

35. On August 20, 2015, Plaintiff submitted formal complaints regarding Taneff's conduct to the Office of Inspector General, the Ohio Department of Administrative Services (DAS) and the Governor's Office on Boards and Commissions. Exhibit 15, Plaintiff's August 20, 2015 email.

36. By letter dated September 4, 2015, the Office of Inspector General (OIG) stated that it did not find sufficient cause to open an investigation and directed her Megan Fitzmartin, the Governor's Office's liaison to Boards and Commissions. See Exhibit 16, September 4, 2015 OIG Letter. Plaintiff discussed her concerns with Stephanie Loucka, DAS Chief of Human Resources on September 10, 2015.

37. On September 11, 2015, Plaintiff filed a Charge of Discrimination in Employment with the Ohio Civil Rights Commission (OCRC) asserted that since Taneff joined the Board in December 2014, he harassed her based upon her sex and he intimidated, humiliated, and threatened her continued employment in an attempt to force her resign. See Exhibit 17, September 11, 2015 Charge of Discrimination.

**Retaliation against Plaintiff**

38. As soon as Taneff learned that Plaintiff had filed a complaint about his behavior, he immediately commenced a months long campaign of retaliation and harassment that culminated in Plaintiff's constructive discharge.

39. On September 19, 2015, Taneff first learned of Plaintiff's complaint when Ms. Loucka emailed Plaintiff and all Board Members regarding Plaintiff's complaint. See Exhibit 18, September 19-21, 2015 Loucka Taneff emails.

40. On September 21, two days after he learned of her complaint, Taneff accused Plaintiff and other Board members of making false and defamatory statements about him. In a response to all recipients of Ms. Loucka's email, Taneff demanded that Ms. Loucka provide a copy of her entire file, stating:

> I want to see if any of the other Board Members participated in making any false or defamatory statements or committed an abuse of public office or assisted Ms. Niekamp in doing the same.

Exhibit 18.

41. On September 23, 2015, four days after he learned of Plaintiff's complaint, Taneff emailed Board President Boyer alleging that Plaintiff had altered email correspondence with a Columbus Dispatch reporter more than a year earlier, and demanding an investigation. Exhibit 19, September 23, 2015 Taneff Boyer email exchange.

42. On September 24, 2015, the Columbus Dispatch submitted an O.R.C. § 149.43 Public Records Request to the Board. See Exhibit 20, September 24, 2015 Columbus Dispatch Public Records Request.

43. On September 28, 2015, Taneff submitted a complaint to the Ohio Supreme Court's Office of Disciplinary Counsel asserting that Plaintiff engaged in the unauthorized practice of

law and requesting the issuance of a cease and desist order against Plaintiff. See Exhibit 21, September 28, 2015 Unauthorized Practice of Law Complaint.

44. On September 29, 2015, at 11:10 a.m., Taneff submitted a public record request to Plaintiff demanding the Board's By-Laws for Employees, Handbook For Employees and a Policy Manual For Employees. Plaintiff responded at 11:21 a.m., acknowledged Taneff's request for public records, and stated that he would receive a response from herself, the Board chair, or the Board's legal counsel. See Exhibit 22, September 29-30, 2015, Email Exchange.

45. Less than twenty-four hours after his request, on September 30 at 10:53 a.m., Taneff wrote:

> It is a breach of duty to obstruct me by continuing to refuse to provide the requested info and documentation.

See Exhibit 22, September 29-30, 2015, Email Exchange

46. At 11:54 a.m., Taneff sent the Board Chair and the Board's counsel an email under the subject "NIEKAMP-RICHARDS ALTERED EMAIL ISSUE RE PRE-PAID FUNERAL FRAUD ARTICLE BY DISPATCH," stating "I am demanding that Ms. Niekamp be immediately suspended of all of her Executive Director duties." See Exhibit 23, September 30, 2015 Taneff emails.

47. At 12:05 p.m., Taneff replied to his own email, included Susan Walker as a recipient, and stated: "I am demanding you turn this matter over to the Ohio Inspector General and the Franklin County Prosecutor." See Exhibit 23, September 30, 2015 Taneff emails.

48. Board President Greg Boyer commenced an internal investigation, in which he requested Plaintiff provide an affidavit regarding her email correspondence with the Dispatch more than a year earlier.

49. On October 1, Plaintiff submitted her Affidavit to the Board Chair, who forwarded it to the Board's counsel. The Board's counsel forwarded Plaintiff's Affidavit to Taneff.

50. On October 2, the Columbus Dispatch asked for a copy of Plaintiff's Affidavit.

51. On October 10, Plaintiff sent an email to all Board Members and counsel reporting that she spoke with Randy Ludlow from the Columbus Dispatch. She advised that Mr. Ludlow stated that Taneff alleged (1) that the Board was "doing nothing to address the misappropriation of preneed"; (2) that Plaintiff was operating outside her scope regarding the settlement of cases; and (3) that Plaintiff altered an email in September 2014.

52. At the October 19, 2015 Board Meeting, upon Taneff's motion the Board held an Executive Session "pursuant to Revised Code Section 121.22(G)(1) for the sole purpose of the consideration of any of the following matters, to consider the appointment, employment, dismissal, discipline of a public employee or official, or the investigation of charges or complaints against a public employee or official." See Exhibit 24, October 19, 2015 Minutes.

53. After the Executive Session, Taneff moved the Board to suspend Plaintiff from her duties. The motion did not pass.

54. On November 24, 2015, Plaintiff received notice of Taneff's unauthorized practice of law complaint from the Disciplinary Counsel. See Exhibit 25.

55. As a result of Taneff's complaint, Plaintiff had to retain legal counsel to defend against Taneff's baseless charge of wrongdoing for actions which he had known of and approved as a Board member.

56. On August 25, 2016 the Disciplinary Counsel of the Ohio Supreme Court notified Taneff that it was closing his Complaint against Plaintiff alleging the unauthorized practice of law, and

11

specifically noted that the Board had specifically delegated the authority to negotiate settlements to Plaintiff:

> While there is no question that the negotiation and preparation of consent and settlement agreements constitutes the practice of law, whether Ms. Niekamp's actions on behalf of the Board were improper and the unauthorized practice of law is not as clear. Certainly the Board intended that the executive director would have such authority. Several administrative agencies provide similar authority to their directors, realizing that requiring the participation of the OAG at every step in the process may significantly slow resolution of matters. Because Ms. Neikamp has ceased the questionable conduct and because there is not substantial, credible evidence that her actions were improper, we are not pursuing this matter further.

See Exhibit 26, August 25, 2016 Disciplinary Counsel letter.

### Constructive Discharge and Replacement with Less Qualified Male Candidate

57. In April 2016, a new Board member was appointed for the first time since Taneff learned of Plaintiff's complaint and charge of discrimination. Jon Rettig, Sr. joined the Board as a licensed member of the profession.

58. At the July 18, 2016 meeting, the Board elected Jon Rettig, Sr. as the Board President and Taneff as the Vice President. See Exhibit 27, July 19, 2016 Minutes.

59. Upon Rettig's successful motion, the Board held an executive session to consider dismissing Plaintiff from her position. The meeting was adjourned before a vote was held.

60. On July 22, Plaintiff submitted her letter of resignation. See Exhibit 28 July 22, 2016 Plaintiff's Letter of Resignation. The Board met on July 26 and approved a motion to accept Plaintiff's resignation. See Exhibit 29, July 26, 2016 Minutes.

61. Following an executive session, the Board approved a motion to appoint Eric Griffin, a male, as interim executive director.

62. At the August 15 meeting, the Board approved a motion to appoint Tim Derickson, a male, as the executive director of the Board, effective August 22, 2016. See Exhibit 30, August

15, 2016 Minutes. Derickson was not as qualified as Plaintiff for the position and received a higher compensation.

63.  At the September 19, 2015 Meeting, Taneff moved the Board to discontinue recording Board meeting by video or audio. The motion passed unanimously. See Exhibit 31, September 19, 2016 Minutes.

64.  After Plaintiff's departure, Taneff continued baseless charges of wrongdoing, demanding an investigation of Plaintiff's use of a vehicle and referring her to the State Auditor for an investigation of her time records and expenditures, all without any evidence of wrongdoing.

65.  The actions described above caused the Plaintiff reputational harm, embarrassment, and mental anguish, expense, and loss of income.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Employment Discrimination Based on Sex and Hostile Environment

66.  Plaintiff incorporates the above paragraphs as if fully rewritten herein.

67.  Taneff subjected Plaintiff to a hostile work environment and disparate treatment based upon her sex in violation of 42 U.S.C. § 2000e-2, 42 U.S.C.§ 1981, and O.R.C. § 4112.02(A).

68.  Taneff regularly used the term "peachka" in reference to and in greeting Plaintiff, knowing that it is a Slavic word for "cunt." Instead of using her name, Taneff often said to Plaintiff – "Hello peachka" or "See you later, peachka".

69.  Taneff attacked, demeaned and subjected Plaintiff to a hostile cross-examination because of sex with each contact, including in email and at public meetings. Taneff did not treat any similarly-situated male executive director in the same manner or tone.

70. Taneff repeatedly asked Plaintiff to identify the "tech guy" and questioned her ability to assist him to change his password.

71. Taneff leveled unfounded charges of wrongdoing against Plaintiff for allegedly engaging in the unauthorized practice of law, although the Board had directed Plaintiff to engage in the practices that were the subject of Taneff's complaint, and Taneff himself was aware of and ratified the practice. On October 19, 2015, Taneff demanded that Plaintiff be dismissed from her position for executing the Board's orders. See Exhibit 32.

72. Taneff has not filed a disciplinary counsel complaint against or demanded the dismissal of a similar-situated, non-attorney, male executive director for negotiating settlements on behalf of a state board, although he authorized the same practice while serving for another state board.

73. Taneff directed Plaintiff to meet with the Attorney General's office and then attacked and demanded her dismissal for having followed his directions.

74. Taneff made every effort to publicly attack, demean, and humiliate Plaintiff. Taneff has not engaged in similar conduct in connection with a similarly-situated male executive director.

75. Taneff intentionally engaged in such conduct for the purpose of making the workplace intolerable for Plaintiff.

76. The conduct of Taneff was severe and pervasive, and it resulted in a hostile work environment.

77. The Board replaced Plaintiff with a younger male, who was less qualified for the position, and paid him a higher salary.

78. The Board replaced Plaintiff with lesser qualified males and at a higher rate of pay.

79. As a result of Defendants' conduct, Plaintiff suffered reputational harm, embarrassment, and mental anguish, expense, and loss of income.

**SECOND CLAIM FOR RELIEF**
**Retaliation**

80. Plaintiff incorporates the above paragraphs as if fully rewritten herein.

81. Upon his discovery on September 19, 2015, that Plaintiff engaged in protected activity by filing a complaint about his discriminatory treatment of her based upon her sex, Defendants, through the actions of Taneff, immediately commenced a campaign of retaliation and harassment against Plaintiff.

82. On September 21, 2015, Taneff retaliated against Plaintiff by writing: "I want to see if any of the other Board Members participated in making any false or defamatory statements or committed an abuse of public office or assisted Ms. Niekamp in doing the same." Exhibit 33. This email was meant to deter other Board members from supporting Plaintiff in opposing Taneff's unlawful conduct.

83. On September 23, 2015, four days after he learned of Plaintiff's complaint, Taneff emailed Board President Boyer alleging that Plaintiff had altered email correspondence with a Columbus Dispatch reporter more than a year earlier, and demanding an investigation. Exhibit 34, September 23, 2015 Taneff Boyer email exchange.

84. On September 28, 2015, Taneff retaliated against Plaintiff by filing a complaint with the Ohio Supreme Court Office of Disciplinary Counsel alleging that Plaintiff had engaged in the unauthorized practice of law. Exhibit 35.

85. On September 30, 2015, Taneff retaliated against Plaintiff by demanding that she be dismissed, reported to the Office of Inspector General and the Franklin County Prosecutor's Office. See Exhibit 36.

86. On October 19, 2015, Taneff retaliated against Plaintiff by again demanding the dismissal of Plaintiff.

87. In July 2016, Defendants retaliated against Plaintiff by scheduling a special session to vote to terminate Plaintiff for the baseless charge of engaging in the unlawful practice of law.

88. After accepting Plaintiff's resignation letter, the Board retaliated against Plaintiff by voting to publicly release a confidential memorandum prepared by the Attorney General's Office regarding the practice of having a non-attorney executive director participate in settlement negotiations.

89. Taneff also retaliated against Plaintiff by requesting that the State Auditor conduct an audit of Plaintiff.

90. Defendants' conduct constituted unlawful retaliation in violation of 42 U.S.C. § 2000e-2, and O.R.C. § 4112.00 *et al.*

91. As a consequence of Defendants' conduct, Plaintiff suffered reputational harm, embarrassment, and mental anguish, expense, and loss of income.

### THIRD CLAIM FOR RELIEF
### Constructive Discharge

92. Plaintiff incorporates the above paragraphs as if fully rewritten herein.

93. Taneff engaged in all of the above-conduct and false allegations to force Plaintiff to resign or be terminated from her position in violation of 42 U.S.C. § 2000e-2, and O.R.C. § 4112.02(A).

94. Taneff repeatedly demanded that the Board discipline or terminate Plaintiff both because of sex, and because she filed a complaint regarding Taneff's unlawful conduct.

95. Taneff demanded that the Board consider or vote on whether to take adverse employment action against Plaintiff during Board meetings in March 2015, April 2015, July 2015, and October 2015.

96. In July 2016, after a change in the composition of the Board, Taneff demanded Plaintiff's termination for allegedly engaging in the unauthorized practice of law, for practices in which the Board had authorized and directed her to engage.

97. After the Board scheduled a special session for July 2016 to vote on her termination, Plaintiff had no choice but to submit a resignation letter.

98. Plaintiff was constructively discharged from her position due to unlawful sex discrimination and retaliation by Defendants.

99. As a consequence of Defendants' conduct, Plaintiff suffered reputational harm, embarrassment, and mental anguish, expense, and loss of income.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests the following relief:

(1) Injunctive relief ordering Defendant to reinstate Plaintiff to her position, to restore her State Employee Retirement System pension and to advance her pension to a rate that it would have accrued from the time of separation, and to restore her vacation and sick time benefits to the level that existed at the time of separation;

(2) Back pay and compensatory damages in the amount of one million dollars ($1,000,000.00);

(3) Costs of this action, including attorneys' fees; and

(4) Such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Emily White*
Emily White (0085662)
Marc E. Dann (0039425
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Phone (216) 373-0539

17

        Fax (216) 373-0536
        notices@dannlaw.com

        */s/ Rachel K. Robinson*
        Rachel K. Robinson (0067518)
        57 Jefferson Avenue, Suite G100
        Columbus, OH 43215
        Telephone: (614) 537-7553
        Email:  rachel.robinson.law@gmail.com
        ***Co-Counsel for Plaintiff***

## JURY DEMAND

The Plaintiff hereby demands a jury of eight (8) to determine all issues triable by jury in this matter.